**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No.: 1:20-cr-00054 (ABJ)** |
| | **:** | |
| | **:** | |
| **ANTONIO LOVELACE,** *et al.*, | **:** | |
| **Defendants.** | **:** | |
| | **:** | |

**UNITED STATES' RESPONSE TO COURT'S INQUIRY REGARDING TIMING OF DISCLOSURES REGARDING THE IDENTITY OF THE POTENTIAL COOPERATING WITNESS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Response to the Court's Inquiry Regarding Timing of Disclosures Regarding the Identity of the Potential Cooperating Witness, following the February 23, 2022, hearing during which the Court requested additional information and legal argument on this issue.

*First*, the Government has disclosed to defense and the Court all materials in the Government's possession pertaining to the substance of the cooperator's testimony in this case – and provided those materials approximately one month or more before the witness is expected to testify.   The only information the Government has temporarily withheld due to safety concerns is the cooperating witness' identity, and materials that would disclose the cooperator's identity.   The Government has requested additional time before disclosing that information to allow counsel for cooperating witness sufficient time to help secure the safety of close family members.   The Government has been informed this process is expected to be completed the week of February 28, 2022, after which the Government would disclose the cooperating witness' identity and attendant materials.   The Government also will immediately disclose any plea agreement if such an

agreement is reached with the witness (the defendant previously cooperated in another matter in another jurisdiction; that cooperation did not relate to his testimony in this case, and there is currently no agreement with the witness regarding his testimony in this case).

*Second*, trial courts in this Circuit have routinely held that it is appropriate for the Government to disclose the identity of a cooperating and other prosecution witnesses, as well as potential impeachment materials, close to trial where safety concerns mitigated against earlier disclosure. Indeed, this Circuit has "held that precluding pretrial discovery of the prosecution's witness list does not automatically infringe a defendant's right to present a defense, especially where 'security concerns for the witnesses plainly militated against it,'" and "[t]he constitutional right to cross examine has never been held to encompass a right to pretrial disclosure of prosecution witnesses." *United States v. Celis*, 608 F.3d 818, 831-32 (D.C. Cir. 2010).

Accordingly, and for the reasons discussed in the Supplement to this Response,[1] the Government respectfully requests that the Court permit delayed disclosure of the witness's identity until the witness' family has been secured. Further, for the reasons detailed herein, the Court should not exclude testimony of this witness due to the timing of the disclosures, which are consistent with Circuit precedent and practice.[2]

---

[1] The Government has filed a Supplement to this Response under seal, which provides additional detail regarding safety concerns and the status of discussions among the parties in this case.

[2] Notably, prior to the hearing on February 23, 2022, none of the four defendants moved to compel information regarding the identity of the potential cooperating witness. Exclusion of the witness' testimony where no party has previously sought the information – as is a regular practice – is an extreme sanction and would ultimately prevent the jury from hearing critical testimony regarding the defendants' involvement in armed narcotics trafficking. *Compare United States v. Ford*, No. 15-CR-25 (defendant moved to compel identity of cooperating witness prior to trial and trial court denied defense motion at 2016 WL 482871, at *4 (D.D.C. February 4, 2016)).

I.      **FACTUAL BACKGROUND**

The Government refers to the factual background and procedural history set forth in its

Rule 404(b) motion, filed on January 14, 2022 (ECF No. 153).

II.     **INFORMATION REGARDING POTENTIAL COOPERATING WITNESS**

The Government provides the following brief summary of information regarding the

potential cooperating witness, and attendant safety concerns for the witness and his family, to assist

the Court in understanding the timing of disclosures by the Government.

As early as May 19, 2021, the Government disclosed to defense counsel that it anticipated

calling at trial a potential cooperating witness, separate and apart from the confidential informant

discussed in the residential search warrant executed in this case.   Shortly after being assigned to

this case, the undersigned prosecutors contacted the cooperating witness' counsel at the end of

January 2022.   On February 1, 2022, the Government conferred with the cooperator's counsel,

agreeing to move forward with having the cooperating witness brought to Washington, D.C. in

anticipation of his testimony and to prepare for trial.   The cooperating witness was detained hours

away, *i.e.*, not within a short driving distance.   As the Court and defense are aware, global

pandemic protocols have made it difficult for attorneys to access detained defendants at federal

penitentiaries, sometimes taking weeks to make contact.

On February 8, 2022, the Government submitted to the Court a Writ of Habeas Corpus Ad

Testificandum, to deliver the cooperating witness to Washington, D.C. for trial, which the Court

executed on February 14, 2022.   Shortly after the February 16, 2022, hearing – and approximately

one month or more before the cooperating witness is expected to testify – the Government

disclosed to defense and the Court all facts pertaining to the instant case provided by the

cooperating witness that was in the Government's possession.   This includes summaries of DEA debriefs conducted with the cooperating witness, as well as text messages between the cooperating witness and one of the cell phones recovered from the offense location, the latter of which had already been disclosed to defense in 2021 via the production of cell phone extractions.   The Government also disclosed to defense and the Court notes taken by a previously-assigned AUSA who spoke with the cooperating witness regarding the facts of this case.   Upon request of the cooperating witness' counsel, the Government temporarily redacted identifying information of the cooperating witness while accommodations could be made to secure the safety of the witness' close family members, in anticipation of his testimony at trial.   The cooperating witness' counsel is working to finish securing the safety of close family members the week of February 28, 2022, after which the Government would produce unredacted versions of the previously disclosed materials.   As is apparent from the disclosed information, the universe of materials and facts known to the Government thus far from the cooperating witness is small.   To the extent the Government learns additional facts pertaining to this case through forthcoming discussions with the cooperating witness, it would disclose it immediately to defense and the Court.

As the Government stated during the February 23, 2022 hearing, the cooperating witness came to the attention of the U.S. Attorney's Office in Washington, D.C. via the U.S. Attorney's Office in the Eastern District of Virginia.[3]   The cooperating witness did not testify in any forum in the Eastern District of Virginia regarding the facts of this case.   Although the cooperating

---

[3] Undersigned counsel conferred with the U.S. Attorney's Office in the Eastern District of Virginia regarding the role played in their investigation by defense counsel for Roland Howard.   As Government counsel has conveyed to Mr. Howard's counsel, there is no reason to believe at present time that there is a conflict of interest.

witness received *no* benefit for providing facts relevant to the instant case during debriefs with prosecutors in the U.S. District Court for the Eastern District of Virginia, undersigned counsel requested copies of the plea agreement, presentence report, Rule 35 motion, and related materials to produce to defense in the interest of fulsome discovery.[4]   Because those materials contain identifying information of the cooperating witness, and again upon the request of the cooperating witness' counsel, the Government intends to produce these materials to defense and the Court after the cooperating witness' family members have been secured.

As the Government noted in its February 17, 2022 disclosure, no plea agreement with the cooperating witness currently exists regarding the instant case.   The cooperating witness has a pending D.D.C. matter that is in a probation revocation posture, in which he faces an additional sentencing exposure of 60 months maximum.   To the extent a plea agreement is reached with the cooperating witness regarding the pending D.D.C probation revocation matter, the Government will produce that information immediately to defense and the Court.

## III.    LEGAL ARGUMENT

### A.    *Well-Established Precedent in this Circuit Recognizes the Need to Protect Witness Identities Where Disclosure May Compromise Witness Security*

This Circuit has "held that precluding pretrial discovery of the prosecution's witness list does not automatically infringe a defendant's right to present a defense, especially where 'security concerns for the witnesses plainly militated against it.'"   *United States v. Celis*, 608 F.3d 818, 831-32 (D.C. Cir. 2010) (*quoting United States v. White*, 116 F.3d 903, 918 (D.C. Cir. 1997)).   As

---

[4]  The Government is available to provide the Court an *ex parte*, *in camera* review of the materials from the Eastern District of Virginia while the cooperating witness' counsel helps secures the safety of family members.

a result, the timing of disclosing *Giglio* material must be weighed in light of concerns for witness safety – sometimes necessitating the disclosure of such information shortly before trial.   *See United States v. Pray*, 764 F. Supp. 2d 184, 189, 190 (D.D.C. 2011) (stating "[p]rotecting witnesses from harm is the norm, not the exception").   In addition, this Circuit has held that "the Jencks Act directs that in a criminal prosecution, statements made by government witnesses or prospective government witnesses are not open to discovery or inspection by the defense until said witnesses have testified on direct examination in the trial of the case."   *United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988).

Accordingly, this Court has held that it was appropriate for the Government to disclose the identity of a cooperating and other prosecution witnesses, as well as potential impeachment materials, close to trial where safety concerns mitigated against earlier disclosure.   *See United States v. Edelin*, 128 F. Supp. 2d 23, 37-38 (D.D.C. 2001) (court ordered the identification of cooperating and other witnesses – as well as impeachment materials such as plea agreements, presentence reports, and other documents – at least three days before a witness' testimony because releasing the "information would threaten the safety of any person"); *see id.* at 38 ("The time provided by the Court will balance the interests of the defendants in the impeachment evidence and other information with the safety of witnesses and other persons related to this case."); *see also Ford*, No. 2016 WL 482871, at *4 ("the D.C. Circuit has long recognized that the government need not disclose its witness list before trial except in capital cases"); *see id.* (pursuant to Jencks, "statements of government witnesses not discoverable by the defense until said witness has testified on direct examination in the trial of the case" (quotations and citations omitted)); *United States v. Savoy*, 889 F. Supp. 2d 78, 114 (D.D.C. 2012) ("Moreover, it is this Court's practice to

require the government to turn over all Jencks Act material on the Friday before a government witness is to testify. This material would include the identity of the witness."); *United States v. Higgs*, 713 F.2d 39, 44 (3d. Cir. 1983) (holding that turning over *Giglio* material on the day the government witnesses are scheduled to testify satisfies defendants' rights to a fair trial).[5]

Similarly, in *United States v. Holland*, 41 F. Supp. 3d 82, 103 (D.D.C. 2014), Judge Contreras denied the defendant's motion to disclose identities of confidential informants and motion for disclosure of *Giglio* and *Jencks* in light of witness safety:   "This Circuit has previously recognized that there is an inherent violence and danger that accompanies the cocaine trade and that disclosure of an informant's identity exposes them to the real potential of retaliation at the hands of cocaine traffickers."   *Id*.   Given these safety concerns, the Court stated that it

> joins the common standard practiced by numerous other Judges in this District, and orders the Government to provide Defendant with the *Jencks* materials the Friday before the week that the witness will be testifying. . . .

> To the extent that the Defendant does not already know the identities of the Government's cooperating witnesses, he shall have adequate time to investigate the biases for such a small group of individuals when he receives such information closer to the time of their proposed testimony.

*Id*. at 105.   Here, only one cooperating witness is involved, and the defendants will have ample

---

[5] The *Celis* Court also highlighted Congress' interest in balancing the pretrial disclosure of witness information with the chilling effect disclosure may have on witnesses providing testimony against defendants.   *See Celis*, 608 F.3d at 832 ("[C]oncern about witness security contributed to the 1975 defeat of a proposed revision of Criminal Rule 16 that would have required pretrial disclosure of prosecution witnesses, because such disclosure was considered 'not in the interest of the effective administration of criminal justice' due to '[d]iscouragement of witnesses and improper contacts directed at influencing their testimony.'" (quoting H.R. Rep. No. 94-414, at 12 (1975) (Conf. Rep.), reprinted in 1975 U.S.C.C.A.N. 713, 716)).

time to prepare to cross-examine the witness at trial.

Moreover, vague assertions by the defense about having enough time prepare for trial is not sufficient to overcome the need to protect a cooperating witness and his family – particularly where, as here, defense counsel has received documents regarding the substance of the cooperating witness's testimony that is in the Government's possession, and can prepare to cross examine the witness on the veracity of his expected testimony.   This Circuit reasoned in *White* that the "district court's denial of a defendant's motion to discover the prosecution's witness list was within its discretion because the defendant had 'offered no special reason in favor of disclosure' and because 'potential witnesses had been threatened, assaulted, even murdered.'"   *See Celis*, 608 F.3d at 832 (quoting *White*, 116 F.3d at 913, 918).   This Circuit in *Celis* noted that other federal courts of appeals have held similarly.   *See Clark v. Ricketts*, 958 F.2d 851, 855 (9th Cir. 1991); *United States v. Watson*, 599 F.2d 1149, 1157 (2d Cir. 1979), *amended on reh'g on other grounds*, 690 F.2d 15 (2d Cir. 1979), *modified on reh'g on other grounds sub nom. United States v. Muse*, 633 F.2d 1041, 1042 n.1 (2d Cir. 1980); *Caldwell v. Minnesota*, 536 F.2d 272, 273-74 (8th Cir. 1976); *United States v. Alston*, 460 F.2d 48, 51-52 (5th Cir.1972); *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969).[6]   Defendants' conclusory assertions at the February 23, 2022, hearing fall well short of establishing that preparing for trial – especially given the small universe of information related to the cooperating witness in this case – outweighs the need to protect the

---

[6] In the analogous context of rejecting the argument that the Fifth Amendment's due process clause "required the prosecution to disclose material impeachment evidence prior to entry of a plea," *Celis*, 608 F.3d at 832, the Supreme Court observed that the "careful tailoring that characterizes most legal Government witness disclosure requirements" helps prevent "disrupt[ing] ongoing investigations" and "expos[ing] prospective witnesses to serious harm." *United States v. Ruiz*, 536 U.S. 622, 631-32 (2002).

cooperating witness and his family.   This case involves an armed narcotics trafficking operation – where large quantities of cocaine, crack cocaine, PCP, and marijuana were recovered in an apartment with multiple loaded firearms – and as a result, where the defendants are facing very significant sentences; such circumstances create concerns about safety to the cooperating witness and his family were the cooperator's identity to be revealed prematurely.[7]

Moreover, this Circuit has held that "[t]he constitutional right to cross examine has never been held to encompass a right to pretrial disclosure of prosecution witnesses."   *Celis*, 608 F.3d at 831 (quoting *White*, 116 F.3d at 913; *citing Weatherford v. Bursey*, 429 U.S. 545 (1977) and Criminal Rule 16); *see also United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007); *United States v. Edwards*, 47 F.3d 841, 843 (7th Cir. 1995); *United States v. Alessi*, 638 F.2d 466, 481 (2d Cir. 1980).   "[T]he right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination," *Celis*, 608 F.3d at 831 (quotations and citation omitted), and "does not create a right to pretrial discovery," *United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006); *see also United States v. Wilson*, 605 F.3d 985, 1003 (D.C. Cir. 2010); *United States v. Tarantino*, 846 F.2d 1384, 1415-16 (D.C. Cir. 1988).

Finally, this Circuit has also held that *Brady* and its progeny do not obligate the Government to disclose prior to trial the identity of a witness who will provide inculpatory information about the defendants.   "It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all

---

[7] In the Supplement to this Response, the Government provides additional details regarding the safety concerns in this case.   Here, where all four defendants are on pretrial release, these concerns are even more pressing than they may be in a case where a defendant is detained and may have limited ability to attempt to take action to prevent the witness from testifying against him.

witnesses who will testify unfavorably."   *Celis*, 608 F.3d at 831 (*quoting Weatherford*, 429 U.S. at 559).   Indeed, more than 45 years ago, this Circuit held that "under *Brady* the prosecution has no duty to disclose its witness list prior to trial in a noncapital case."   *Celis*, 608 F.3d at 831 (*relying on United States v. Bolden*, 514 F.2d 1301, 1312 (D.C. Cir. 1975).

>    B.    *Even if the Court Were to Find Disclosure of the Witness' Identity to be Untimely,*
>          *Exclusion of the Witness' Testimony Would Not be the Appropriate Remedy*

As detailed above, the Government has provided information regarding the substance of the cooperating witness' testimony in advance of trial so defense can prepare for trial.   None of the defendants filed a motion to compel this information prior to the February 23, 2022, pretrial conference; accordingly, excluding the witness' testimony at trial as a sanction would be an extreme remedy that is not consistent with the caselaw regarding the timing of such disclosures or with fairness considerations.[8]   Should additional time be needed to prepare the defense, a brief continuance would allow the defendants time to prepare while ensuring the safety of the cooperating witness' family.

## CONCLUSION

The balance of interests in this case weigh against requiring the Government to disclose the identity of the cooperating witness – and jeopardizing the safety of his close family members before they are secured.   Accordingly, for the forgoing reasons and those mentioned in the Supplement to this Response, the Government respectfully requests that the Court, consistent with

---

[8] The Government in no way minimizes that certain materials were provided late and that this Court has ruled, for instance, that certain evidence from cell phones will not be permitted because of the late disclosure and the fact that the materials changed the contours of the case.   However, the information regarding the identity of the cooperator is not subject to the same temporal issues due to the safety concerns implicated for his family, as detailed in the case law set forth above.

the practice of courts in this Circuit, permit the Government to delay disclosure of the witness'

identity in order to allow sufficient time to ensure the safety of the cooperator's family.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Madhu Chugh*
MADHU CHUGH
D.C. Bar No. 992122
MEREDITH E. MAYER-DEMPSEY
N.Y. Attorney No. 5213202
Assistant United States Attorneys
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 815-8609
Madhu.Chugh@usdoj.gov

February 25, 2022

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing pleading has been served upon counsel

for the defendants via the electronic case filing system, this 25th day of February, 2022.


*/s/ Madhu Chugh*
MADHU CHUGH
Assistant United States Attorney